FILED

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

MATTHEW DAVIS and
CASEY DAVIS,

CASE NO.: 3:18-cv-1336-J-34PDB

    Plaintiffs,

-VS-

NAVY FEDERAL FINANCIAL GROUP,
LLC,

    Defendant.

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW Plaintiffs, Matthew Davis ("Mr. Davis") and Casey Davis (Ms. Davis"), by and through the undersigned counsel, and sues Defendant, Navy Federal Credit Union, LLC (hereinafter, "Defendant"), and in support thereof respectfully alleges violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA") and the Florida Consumer Collection Practices Act, Fla. Stat. § 559.55 *et seq.* ("FCCPA").

### INTRODUCTION

1. The TCPA was enacted to prevent companies like Defendant from invading American citizen's privacy and prevent abusive "robo-calls."

2. "The TCPA is designed to protect individual consumers from receiving intrusive and unwanted telephone calls." *Mims v. Arrow Fin. Servs., LLC*, -US--, 132 S.Ct., 740, 745, 181, L.Ed. 2d 881 (2012).

1

3. "Senator Hollings, the TCPA's sponsor, described these calls as 'the *1256 scourge of modern civilization, they wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone out of the wall.' 137 Cong. Rec. 30, 821 (1991). Senator Hollings presumably intended to give telephone subscribers another option: telling the autodialers to simply stop calling." *Osorio v. State Farm Bank, F.S.B.*, 746 F. 3d 1242 (11th Cir. 2014).

4. According to the Federal Communications Commission (FCC), "Unwanted calls and texts are the number one complaint to the FCC. There are thousands of complaints to the FCC every month on both telemarketing and robocalls. The FCC received more than 215,000 TCPA complaints in 2014." *Fact Sheet: Wheeler Proposal to Protect and Empower Consumers Against Unwanted Robocalls, Texts to Wireless Phones*, Federal Communications Commission, (May 27, 2015), http://transition.fcc.gov/Daily_Releases/Daily_Business/2015/db0527/DOC-333676A1.pdf.

## JURISDICTION AND VENUE

5. This is an action for damages exceeding Seventy-Five Thousand Dollars ($75,000.00) exclusive of attorney fees and costs.

6. Jurisdiction and venue for purposes of this action are appropriate and conferred by 28 U.S.C. § 1331, Federal Question Jurisdiction, as this action involves violations of the TCPA.

7. Subject matter jurisdiction, federal question jurisdiction, for purposes of this action is appropriate and conferred by 28 U.S.C. § 1331, which provides that the district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States; and this action involves violations of 47 U.S.C. § 227(b)(1)(A)(iii). See *Mims v. Arrow Fin. Servs., LLC*, S.Ct. 740, 748 (2012) and *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1249 (11th Cir. 2014)

8. The alleged violations described herein occurred in Columbia County, Florida. Accordingly, venue is appropriate with this Court under 28 U.S.C. §1391(b)(2) as it is the judicial district in which a substantial part of the events or omissions giving rise to this action occurred.

## FACTUAL ALLEGATIONS

9. Plaintiffs are natural persons, and citizens of the State of Florida, residing in Lake City, Columbia County, Florida

10. Plaintiffs are "consumers" as defined in Florida Statute § 559.55(8).

11. Plaintiffs are "alleged debtors."

12. Plaintiffs are the "called party." See *Breslow v. Wells Fargo Bank, N.A.*, 755 F. 3d 1265 (11th Cir. 2014) and *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242 (11th Cir. 2014).

13. Defendant is a corporation which was formed in Virginia with its principal place of business located at 820 Follin Lane, Vienna, Virginia 22180, and which conducts business in the State of Florida through its registered agent, Corporation System Company located at 1201 Hays Street, Tallahassee, Florida 32301.

3

14. The debt that is the subject matter of this Complaint is a "consumer debt" as defined by Florida Statute §559.55(6).

15. Defendant is a "creditor" as defined in Florida Statute §559.55(5).

16. Defendant called each of the Plaintiffs on Plaintiffs' individual cellular telephone numbers approximately one hundred (100) times in an attempt to collect a debt.

17. Defendant attempted to collect an alleged debt related to a credit card and/or auto loan from Plaintiffs by this campaign of telephone calls.

18. Upon information and belief, some or all of the calls the Defendant made to Plaintiffs' cellular telephone number were made using an "automatic telephone dialing system" which has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator (including but not limited to a predictive dialer) or an artificial or prerecorded voice; and to dial such numbers as specified by 47 U.S.C § 227(a)(1) (hereinafter "auto-dialer calls"). Plaintiffs will testify that they knew it was an auto-dialer because of the vast number of calls they received and because they heard a pause when they answered their phones before a voice came on the line

19. Mr. Davis is the subscriber, regular user and carrier of the cellular telephone number (386) ***-0491 and Ms. Davis is the subscriber, regular user and carrier of the cellular telephone number (386) ***-0342, and were the called parties and recipients of Defendant's calls.

20. Defendant placed an exorbitant number of automated calls to Plaintiffs' cellular telephone numbers, (386) ***-0491 and (386) ***-0342, in an attempt to collect on an alleged debt related to a credit card and/or auto loan.

4

21. On several occasions over the last three (3) years, Plaintiffs instructed Defanant's agent(s) to stop calling their cellular telephones.

22. In or around January of 2018, Mr. Davis received a call from the Defendant on his aforementioned cellular telephone, met with an extended pause, eventually was connected to a live representative, explained to the agent/representative that he was aware of his obligation, and demanded that the Defendant cease placing calls to his aforementioned cellular telephone number with an automatic dialer.

23. During the aforementioned phone conversations in or about January of 2018 with Defendant's agent/representatives, Mr. Davis unequivocally revoked any express consent Defendant may have had for placement of telephone calls to his respective aforementioned cellular telephone number by the use of an automatic telephone dialing system or a pre-recorded or artificial voice.

24. Each subsequent call the Defendant made to the Mr. Davis's aforementioned cellular telephone number was done so without the "express consent" of the Mr. Davis.

25. Each subsequent call the Defendant made to the Mr. Davis's aforementioned cellular telephone number was knowing and willful.

26. Furthermore, on or about August 17, 2018, Mr. Davis received a call from the Defendant on his aforementioned cellular telephone, met with an extended pause, eventually was connected to a live representative, and demanded that the Defendant cease placing calls to his aforementioned cellular telephone number.

27. Similarly, in or around January of 2018, Ms. Davis received a call from the Defendant on her aforementioned cellular telephone, met with an extended pause, and eventually was connected to a live representative. At the time, Ms. Davis was in the hospital due to the fact that she was going into labor, handed her cell phone to her boyfriend, and, at her instruction, he demanded that the Defendant cease placing calls to her aforementioned cellular telephone number.

28. During the aforementioned phone conversations in or about January of 2018 with Defendant's agent/representatives, Ms. Davis unequivocally revoked any express consent Defendant may have had for placement of telephone calls to her respective aforementioned cellular telephone number by the use of an automatic telephone dialing system or a pre-recorded or artificial voice.

29. Each subsequent call the Defendant made to the Ms. Davis's aforementioned cellular telephone number was done so without the "express consent" of the Ms. Davis.

30. Each subsequent call the Defendant made to the Ms. Davis's aforementioned cellular telephone number was knowing and willful.

31. Similarly, in or about March of 2018, due to the continued automated calls, Ms. Davis received yet another call from Defendant, recognized the number, handed her cell phone to her boyfriend, he was connected with an agent/representative of Defendant, reminded them that they had previously been told to stop calling this number, and again demanded that Defendant stop calling her aforementioned cellular telephone number.

32. Despite actual knowledge of their wrongdoing, the Defendant continued the campaign of abuse, calling the Plaintiffs despite the Plaintiffs revoking any express consent the Defendant may have had to call their respective aforementioned cellular telephone numbers.

33. Defendant willfully and/or knowingly harassed and abused Plaintiffs on numerous occasions by calling Plaintiffs' cellular telephone numbers with such frequency as can reasonably be expected to harass, all in an effort related to collection of the subject account.

34. Defendant has a corporate policy to use an automatic telephone dialing system or a pre-recorded or artificial voice to individuals just as it did to Plaintiffs' cellular telephone in this case.

35. Defendant has a corporate policy to use an automatic telephone dialing system or a pre-recorded or artificial voice just as it did to Plaintiffs' cellular telephone in this case, with no way for the consumer, Plaintiffs, or Defendant, to remove the number.

36. Defendant's corporate policy is structured so as to continue to call individuals like Plaintiffs, despite these individuals explaining to Defendant they wish for the calls to stop.

37. Defendant has numerous complaints across the country against it asserting that its automatic telephone dialing system continues to call despite requested to stop.

38. Defendant has had numerous complaints from consumers across the country against it asking to not be called; however, Defendant continues to call the consumers.

39. Defendant's corporate policy provided no means for Plaintiffs to have thier numbers removed from Defendant's call list.

40. Defendant has a corporate policy to harass and abuse individuals despite actual knowledge the called parties do not wish to be called.

41. Not a single call placed by Defendant to Plaintiffs were placed for "emergency purposes" as specified in 47 U.S.C. § 227(b)(1)(A).

42. Defendant willfully and/or knowingly violated the TCPA with respect to Plaintiffs.

43. From each and every call placed without consent by Defendant to Plaintiffs' cell phone, Plaintiffs suffered the injury of invasion of privacy and the intrusion upon their right of seclusion.

44. From each and every call without express consent placed by Defendant to Plaintiffs' cell phone, Plaintiffs suffered the injury of occupation of thier cellular telephone line and cellular phone by unwelcome calls, making the phone unavailable for legitimate callers or outgoing calls while the phone was ringing from Defendant's calls.

45. From each and every call placed without express consent by Defendant to Plaintiffs' cellular telephones, Plaintiffs suffered the injury of unnecessary expenditure of their time. For calls they answered, the time they spent on the call was unnecessary as they repeatedly asked for the calls to stop. Even for unanswered calls, Plaintiffs had to waste time to unlock the cellular telephones and deal with missed call notifications and call logs that reflected the unwanted calls. This also impaired the usefulness of these

features of Plaintiffs' cellular telephones, which are designed to inform the user of important missed communications.

46. Each and every call placed without express consent by Defendant to Plaintiffs' cellular telephones was an injury in the form of a nuisance and annoyance to Plaintiffs. For calls that were answered, Plaintiffs had to go to the unnecessary trouble of answering them. Even for unanswered calls, Plaintiffs had to waste time to unlock the cellular telephones and deal with missed call notifications and call logs that reflected the unwanted calls. This also impaired the usefulness of these features of Plaintiffs' cellular telephones, which are designed to inform the user of important missed communications.

47. Each and every call placed without express consent by Defendant to Plaintiffs' cellular telephones resulted in the injury of unnecessary expenditure of Plaintiffs' cellular telephones' battery power.

48. Each and every call placed without express consent by Defendant to Plaintiffs' cellular telephones where a voice message was left which occupied space in Plaintiffs' cellular telephones or network.

49. Each and every call placed without express consent by Defendant to Plaintiffs' cellular telephones resulted in the injury of a trespass to Plaintiffs' chattel, namely their cellular telephones and their cellular telephone services.

50. As a result of the calls described above, Plaintiffs suffered an invasion of privacy. Mr. Davis was also affected in a personal and individualized way by stress, embarrassment, and aggravation.

51.     Similarly, Ms. Davis was also affected in a personal and individualized way by stress, anxiety, and nervousness. As a result of these calls, Ms. Davis would often be distracted while trying to take care of her newborn child. Additionally, these continued automated calls placed a strain on her relationship with her boyfriend.

## COUNT I
### (Violation of the TCPA by Matthew Davis)

52.     Plaintiff fully incorporates and re-alleges paragraphs one (1) through fifty (50) as if fully set forth herein.

53.     Defendant willfully violated the TCPA with respect to Mr. Davis, especially for each of the auto-dialer calls made to Mr. Davis's cellular telephone after Mr. Davis notified Defendant that he wished for the calls to stop.

54.     Defendant repeatedly placed non-emergency telephone calls to Mr. Davis's cellular telephone using an automatic telephone dialing system or prerecorded or artificial voice without Mr. Davis's prior express consent in violation of federal law, including 47 U.S.C § 227(b)(1)(A)(iii).

**WHEREFORE**, Plaintiff, Matthew Davis, respectfully demands a trial by jury on all issues so triable and judgment against Navy Federal Financial Group, LLC, for statutory damages, punitive damages, actual damages, treble damages, enjoinder from further violations of these parts and any other such relief the court may deem just and proper.

## COUNT II
### (Violation of the TCPA by Casey Davis)

55. Plaintiff fully incorporates and re-alleges paragraphs one (1) through forty- nine (49) and fifty-one (51) as if fully set forth herein.

56. Defendant willfully violated the TCPA with respect to Ms. Davis, especially for each of the auto-dialer calls made to Ms. Davis's cellular telephone after Plaintiff notified Ms. Davis that she wished for the calls to stop.

57. Defendant repeatedly placed non-emergency telephone calls to Ms. Davis's cellular telephone using an automatic telephone dialing system or prerecorded or artificial voice without Plaintiff's prior express consent in violation of federal law, including 47 U.S.C § 227(b)(1)(A)(iii).

**WHEREFORE**, Plaintiff, Casey Davis, respectfully demands a trial by jury on all issues so triable and judgment against Navy Federal Financial Group, LLC, for statutory damages, punitive damages, actual damages, treble damages, enjoinder from further violations of these parts and any other such relief the court may deem just and proper.

## COUNT III
(Violation of the FCCPA by Matthew Davis)

58. Plaintiff fully incorporates and re-alleges paragraphs one (1) through fifty (50) as if fully set forth herein.

59. At all times relevant to this action Defendant is subject to and must abide by the laws of the State of Florida, including Florida Statute § 559.72.

60. Defendant has violated Florida Statute § 559.72(7) by willfully communicating with the debtor or any member of his family with such frequency as can reasonably be expected to harass the debtor or his or her family.

61. Defendant has violated Florida Statute § 559.72(7) by willfully engaging in other conduct which can reasonably be expected to abuse or harass the debtor or any member of his family.

62. Defendant's actions have directly and proximately resulted in Plaintiff's prior and continuous sustaining of damages as described by Florida Statute § 559.77.

**WHEREFORE,** Plaintiff, Matthew Davis, respectfully demands a trial by jury on all issues so triable and judgment against Navy Federal Financial Group, LLC, for statutory damages, punitive damages, actual damages, costs, interest, attorney fees, enjoinder from further violations of these parts and any other such relief the court may deem just and proper.

### COUNT IIII
### (Violation of the FCCPA by Casey Davis)

63. Plaintiff fully incorporates and re-alleges paragraphs one (1) through forty- nine (49) and fifty-one (51) as if fully set forth herein.

64. At all times relevant to this action Defendant is subject to and must abide by the laws of the State of Florida, including Florida Statute § 559.72.

65. Defendant has violated Florida Statute § 559.72(7) by willfully communicating with the debtor or any member of her family with such frequency as can reasonably be expected to harass the debtor or her family.

66. Defendant has violated Florida Statute § 559.72(7) by willfully engaging in other conduct which can reasonably be expected to abuse or harass the debtor or any member of her family.

67. Defendant's actions have directly and proximately resulted in Plaintiff's prior and continuous sustaining of damages as described by Florida Statute § 559.77.

**WHEREFORE,** Plaintiff, Casey Davis, respectfully demands a trial by jury on all issues so triable and judgment against Navy Federal Financial Group, LLC, for statutory damages, punitive damages, actual damages, costs, interest, attorney fees, enjoinder from further violations of these parts and any other such relief the court may deem just and proper.

Respectfully submitted,

*/s/ Shaughn C. Hill*
Shaughn C. Hill, Esquire
FBN: 105998
Morgan & Morgan, Tampa, P.A.
One Tampa City Center
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
Tel: (813) 223-5505
Fax: (813) 223-5402
shill@forthepeople.com
slauredan@forthepeople.com
kzhang@forthepeople.com

*Attorney for Plaintiff*